Karren Kenney – SBN 174872
Kenney Legal Defense
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
855-505-5588

Attorney for *David Hernandez*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

David Hernandez,

Defendant.

CASE NO.: 22CR1913-BAS

Hon. Cynthia Bashant

**RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE**

Defendant David Hernandez hereby submits the following responses to the Government's Motions in Limine. It should be noted that the defense has previously filed motions in limine that address the contents of several of the Government's motions, and therefore will not be readdressed in this brief. This Opposition is to the following:

B. Preclude Third-Party Culpability or "Blind Mule" Evidence

E. Admit Evidence of Prior Smuggling Event

F. Admit United States' Expert Testimony

**Reply to Government Motion B - Preclude Third-Party Culpability or "Blind Mule" Evidence**

The crux of Mr. Hernandez defense is "third-party culpability" that the government has been on notice of since the time Hernandez provided his video recorded post-arrest statement when he stated he was set up. This type of evidence

is also related to "blind mule" evidence regarding transportation of the drugs that the government is clearly aware of given the September 2021 memo is routinely discovers to defendants in drug trafficking cases. (See attached Exhibit A). Mr. Hernandez believed he was only transporting bulk cash. If Mr. Hernandez is not allowed to present defense evidence of third-party culpability and "blind mule" evidence, he will be deprived of providing the jury with his complete defense. This deprivation would in turn result in a fundamentally unfair trial.

**<u>Reply to Government Motion E- Admit Evidence of Prior Smuggling Event</u>**

Any evidence of what the government is claiming to be a "prior smuggling event" should be excluded. There is no reliable evidence the government has provided to establish the June 1-2, 2022 conduct is in any way related to the June 7, 2022 offense. The government characterizing this conduct as a "prior smuggling event" is based upon pure conjecture, and is not "inextricably intertwined" with the charged offense.

Where evidence is not inextricably intertwined and thus excepted from Rule 404(b), courts may still admit other acts evidence if it satisfies Rule 404(b)'s requirements. "Rule 404(b) provides that the district court may admit evidence of prior bad acts if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged." *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010). If these four elements are satisfied, a court must balance the probative value of the evidence against its prejudicial effect to determine whether it is admissible under Rule 403. *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc). Here, the proffered evidence is not "based upon sufficient evidence" or "similar to the offense charged".

As the government's discovery shows, Mr. Hernandez and his wife have lived in Santa Ana and frequent the area because their family resides in the area. The government is grasping at straws by characterizing this trip a week before the

incident as a “prior drug smuggling trip”, and by allowing such uncorroborated evidence to come in would result in a fundamentally unfair trial.

Under Rule 403, a court may also exclude otherwise admissible evidence if its probative value is substantially outweighed by unfair prejudice, confusion, delay, or other factors. Even if the evidence meets the threshold for admissibility under 404(b), the Ninth Circuit "has specifically incorporated Rule 403's probative value/unfair prejudice balancing requirement into the Rule 404(b) inquiry." *Mayans*, 17 F.3d at 1183. Under Fed. R. Evid. 403 balancing, the Court must determine whether the probative value of the evidence substantially outweighs any danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. However, at this point, the Court cannot yet assess whether the other acts' probative value is "substantially outweighed" by, for example, the danger of unfair prejudice. See Fed. R. Evid. 403. Here, the prejudicial effect of allowing the proffered evidence and it’s characterization as a “prior drug smuggling trip” that occurred a week prior would clearly outweigh any probative value and should not be allowed.

**Reply to Government’s Motion F – Admit Expert Testimony**

Defendant Hernandez has no objection to the automotive expert as long as cross-examination is not limited and impeachment evidence is allowed depending on what testimony is offered during the trial.

In regards to the drug expert, the defense filed an in limine motion addressing this.

Dated: July 17, 2023 Respectfully Submitted,

*/s/ Karren Kenney*
Karren Kenney
Attorney for Mr. Hernandez

# EXHIBIT A

# Memorandum

| Subject | Date |
|---|---|
| Disclosure | September 10, 2021 |
| To<br>Defense Counsel | From<br>United States Attorney's Office |

In late 2011 and early 2012, Homeland Security Investigations (HSI) came into possession of information that multiple drug trafficking recruiters in the Baja California border region have allegedly placed help wanted advertisements in Mexican publications. The advertisements were used to recruit drug couriers, although they appeared to offer employment. Recruiters or groups of recruiters paid the drivers hired through the advertisements (e.g., $100 or $200 per job) and the drivers did not know that they would be bringing drugs into the United States. Such an advertisement was allegedly placed in "La Frontera," and possibly in "El Mexicano."

HSI is in possession of information that, in or about May 2012, members of a transportation cell attempted to smuggle narcotics into the United States by concealing them inside a spare tire mounted on the exterior of a vehicle without the knowledge of the driver. The vehicle was to be driven from Mexico into the United States, where the tire would be removed and replaced with another spare tire while the driver was away from the vehicle. The vehicle was one that crossed into the United States at a predictable and regular time and parked at a predictable location.

HSI is in possession of information that, beginning in or about mid-2011, drug traffickers have attached magnets to packages of narcotics and placed them on the undercarriages of cars entering the United States from Mexico without the knowledge of the driver. The vehicles used for this smuggling method are typically those that have crossed into the United States at predictable times and park at the same location, typically the driver's place of employment.

In late 2018 and early 2019, the Drug Enforcement Administration (DEA) came into possession of the following information from a confidential source who provided reliable information in the past. Person 1, whose identity and a nickname are known, is in Mexico and has used others to smuggle drugs to the United States from Tijuana, Mexico by vehicle. Person 1 hired and told the drivers they would enter the United States to bring money back to Mexico from Riverside or Downey, California. Person 1 told the drivers to provide their vehicle a day or two before crossing so a compartment could be installed; in fact, the vehicle also was loaded with drugs. Once in the U.S., the drivers received texts directing them to a shopping center around Riverside or Downey where they parked the car with the keys inside. While the drivers shopped, others took the car to a different location, unloaded the drugs, and returned the car to the shopping center for the driver to take back to Mexico. Person 1 has worked with at least three others identified only by nickname and formerly worked with a fourth person whose identity is known. Person 1 is not known to be affiliated with a known drug cartel.

In November and December 2020, HSI came into possession of information regarding a drug-trafficking organization (DTO) in Tijuana, Mexico which is using unknowing drivers to smuggle narcotics into the U.S. by employing two schemes. In one scheme, the DTO works with corrupt Mexican law enforcement to set up traffic checkpoints. The corrupt officers target Ford F-150s, Nissan Sentras, and Toyota vehicles and place GPS devices in selected vehicles at the checkpoint (however, in one known instance, a Honda CRV was targeted). The DTO monitors the GPS devices to determine whether any of the vehicles are good candidates to be used for smuggling drugs into the U.S. If the DTO decides to use a vehicle, the drugs are placed in the spare tires or spare tire compartment without the knowledge of the driver. The DTO targets Ford F-150s because the drugs can be hidden and easily removed from the external spare tire. The DTO also targets Nissan Sentras and Toyota vehicles because it has the ability to make copies of those keys to allow access to the internal spare tires/spare tire compartments. In another scheme, the DTO works directly with valet staff at a Tijuana casino to obtain keys to vehicles that cross reliably into the U.S. – often through the San Ysidro Port of Entry. The DTO places the drugs in the spare tire or spare tire compartment along with a GPS device to track the narcotics loads. In addition to these methods, the DTO also uses knowing drivers and also installs GPS devices in their cars to track narcotics loads.

HSI and the San Diego Police Department (SDPD) are in possession of information involving four seizures of narcotics in which it appears that DTOs smuggled or attempted to smuggle narcotics loads by placing narcotics and GPS devices in the vehicles of individuals who reside in Mexico and regularly cross the border for work, without the knowledge of the drivers of the vehicles. In two of those seizures, once the driver arrived in the United States and parked his vehicle, other individuals working for a DTO attempted to remove the narcotics and GPS devices from the vehicle. In three of these seizures, the driver/owner of the vehicle contacted law enforcement to report the discovery of the drugs. All four drug seizures, summarized below, occurred during the period from June 2020 through July 2021:

- On June 24, 2020, an employee of a business in San Diego, reported to the SDPD that after she had driven her car from her Tijuana, Mexico residence to her San Diego place of employment, she discovered two duffle bags in the rear of her car. SDPD subsequently searched the car and found two duffel bags containing approximately 100 bindles of methamphetamine in her trunk and two different GPS tracking devices.

- On April 14, 2021, a driver and resident of Mexico was arrested at the San Ysidro Port of Entry (SYS POE) when CBP Officers discovered two duffle inside the spare tire well of her vehicle, which contained multiple packages consisting of approximately 10 kgs of methamphetamine, 6 kgs of heroin, and 5 kgs of fentanyl, along with a GPS tracking device. The driver denied knowledge and stated that the previous evening her car had been parked at her residence in Mexico where her spouse and another individual had been working on another car. HSI agents subsequently interviewed the spouse, who stated that he had placed the duffle bags and tracking device in his spouse's car without her knowledge. The spouse further stated that he had been approached by two drug traffickers who threatened to kill his family if he did not place the drugs in the car.

- On April 23, 2021, CBP Officers were contacted by a U.S. citizen and SENTRI pass holder who resides in Tijuana, Mexico and regularly drives to his business in San Diego, California. This individual told CBP that prior to leaving his Tijuana residence on the morning of April 23, he discovered packages underneath his pickup truck, located on top of the spare tire. The individual then agreed to drive his pickup to the SYS POE where CBP Officers discovered the four packages which contained approximately 4.5 kgs of cocaine. A GPS tracking device was also subsequently recovered from underneath the vehicle. With the individual's consent, HSI agents followed the individual as he drove his pickup to his San Diego business, where agents had set up surveillance. HSI agents subsequently arrested two off-loaders as they were attempting to retrieve the drugs from underneath the parked pickup truck. One of the off-loaders admitted that he was hired by drug traffickers to retrieve the drugs and knew that the pickup truck was equipped with a GPS tracking device. He further admitted that he had retrieved drug packages from the same pickup truck on 7 prior occasions. HSI agents viewed surveillance footage from the San Diego business which appears to depict this prior activity on several occasions.

- On July 13, 2021, CBP Officers were contacted by a U.S. citizen and SENTRI pass holder who resides in Tijuana, Mexico, and frequently crosses the border to travel to jobs at construction sites in the greater San Diego area. This individual notified CBP that he had discovered suspected narcotics packages concealed underneath his SUV, which was parked outside his Tijuana residence. The individual stated that in the early morning hours of July 12, he was awoken by a noise outside his residence which caused his dogs to bark, and he looked outside but did not see anything. The individual agreed to drive his SUV to the SYS POE where CBP Officers discovered three packages, attached underneath the rear of the SUV, containing approximately 1.6 kgs of methamphetamine and 685 gms of fentanyl. With the individual's consent, HSI agents followed the individual as he drove to a Home Depot parking lot in Chula Vista, where agents had set up surveillance. Approximately one hour later, HSI agents arrested two individuals as they were attempting to retrieve the packages from the SUV's undercarriage. In addition to the packages of drugs, agents recovered a GPS tracking device from the undercarriage. Following the arrest, agents recovered GPS tracking devices and magnets from the off-loaders' car. Both off-loaders admitted to working for a drug trafficking organization to retrieve drug packages from cars parked in the U.S. and both admitted that they had retrieved narcotics loads from several cars on multiple occasions since January 2021.

There is additional information which, although it may not be material to your client's case, could be disclosed to you. This information consists of Reports of Interviews of individuals in drug importation cases who: (1) have claimed to have responded to help-wanted newspaper advertisements (and some of the advertisements themselves); (2) have driven vehicles with narcotics concealed in the spare tire; (3) have knowledge of a person who recruited narcotics load drivers to cross into the U.S. by telling the drivers that they would be smuggling currency into Mexico; (4) have knowledge of a DTO that uses unknowing drivers to smuggle narcotics through the checkpoint by using corrupt Mexican law enforcement or casino employees, along with GPS devices; or (5) have had narcotics and GPS tracking devices placed in their vehicles in Mexico without their knowledge. However, the disclosure of the ROIs will require a Protective Order.

This information may exceed the scope of discovery mandated by law and, to that extent, is provided voluntarily and solely as a matter of discretion. By providing this information, the United States does not waive its right to object to any future discovery requests on this or other topics, and does not waive any objection to the admissibility of the above-referenced information.